UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Respondent,<br><br> -vs-<br><br>ANTONIO FELICIANO CRAWFORD,<br><br>     Movant. | NO.    CR-02-0272-WFN-1<br><br>ORDER |

Before the Court is Mr. Crawford's *pro se* 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence [§ 2255 Motion] (Ct. Rec. 182). The Court held an evidentiary hearing on June 30, 2010. At that hearing, Mr. Crawford and his first attorney in this case, Christian Phelps, testified. Mr. Williams, Mr. Crawford's attorney during the bulk of the pretrial, trial, and the first sentencing hearing was unavailable to testify. Following the hearing, the parties submitted briefing in lieu of closing arguments. The Court has reviewed the file, briefing, and testimony and is fully informed.

**FACTS**

A complaint was filed against Mr. Crawford on October 4, 2002. Mr. Crawford was initially assigned counsel, but four days following his initial appearance, Mr. Christian Phelps filed a notice of appearance. Mr. Phelps represented Mr. Crawford in a state matter at the time and agreed to represent on Mr. Crawford in the federal matter as well. Mr. Phelps acknowledged that his memory surrounding his representation of Mr. Crawford is faded given the amount of time that has passed, but had reviewed his file prior to the evidentiary hearing.

Shortly after Mr. Phelps' appearance, he received a freetalk letter from the Government. Mr. Phelps testified that though he had been practicing criminal law since 1995, he was relatively inexperienced in federal court at the time of his representation of Mr. Crawford. It is his normal practice to discuss the benefits and drawbacks of cooperation with clients, but that he may not have shown the actual letter to Mr. Crawford. Mr. Phelps expressed some surprise that his file contained no letter or references to the freetalk letter from himself directed to Mr. Crawford. He indicated that at the time of his representation of Mr. Crawford that he likely was unaware that participation in a freetalk could have led to the Government not filing a § 851. He also testified that he never encourages clients to participate in a freetalk unless the case is "terminal." However, it was Mr. Phelps' belief that Mr. Crawford may have been willing to cooperate due to the copious amount of information he shared with agents directly after his arrest. Mr. Crawford was indicted for Distribution of Heroin and Distribution of Crack Cocaine on October 22, 2002, a few days after the freetalk letter was sent. Mr. Phelps filed motions on Mr. Crawford's behalf, including a Motion to Suppress that was not heard prior to his being discharged by Mr. Crawford. Though he has no independent memory on this point, Mr. Phelps concluded, based on the record and his normal practice, that he wanted to determine the outcome of the suppression motion prior to deciding whether to encourage Mr. Crawford to participate in a freetalk.

Prior to resolution of the Motion to Suppress, on January 30, 2003, Mr. E. Armstrong Williams replaced Mr. Phelps as Mr. Crawford's counsel. According to Mr. Crawford, Mr. Williams never discussed the freetalk letter, nor did he pursue Mr. Crawford's request that he seek a plea deal. Mr. Crawford testified that thanks to Mr. Phelps' review of the discovery, he was aware that the case against him was strong and that he was fearful of the long sentence that he was facing. He indicated that not only was he willing to provide information, but that he had attempted to, through Mr. Williams, on more than

ORDER - 2

one occasion but was rebuffed. He also indicated that he had very little communication with Mr. Williams. The case eventually proceeded to trial. Mr. Crawford again told Mr. Williams that he desired to plead guilty to no avail. In fact, he testified that Mr. Williams told him it was too late. On March 13, 2003, a jury found Mr. Crawford guilty of both counts. He was sentenced to 210 months imprisonment with 6 years of supervised release.

Mr. Crawford appealed and was resentenced to the same term. In the interim, Mr. Williams was disbarred on March 14, 2007, for actions taken (or not taken) between August, 2003 and July, 2004. The grounds were: (1) failure to comply with duties on suspension, (2) lack of diligence, (3) failure to communicate with clients, (4) failure to protect client interests on termination of representation, and (5) non-cooperation with disciplinary investigations. The Court accepted the parties' oral stipulation that Mr. Williams could not be located and was thus unavailable to appear in this matter.

Mr. Crawford now alleges ineffective assistance of counsel on the part of both Mr. Christian Phelps and Mr. E. Armstrong Williams. Mr. Crawford filed his pro se § 2255 Motion on May 13, 2009. After the Government responded, Mr. Crawford requested and was appointed counsel to aid with his reply. Kaily Moran was appointed on November 12, 2009. Once briefing was complete, the Court granted Mr. Crawford's request for an evidentiary hearing on two of the three issues raised by his § 2255 Motion. The Court also allowed the parties to conduct discovery.

Mr. Crawford has two remaining claims:

(1) Defense "counsel failed to inform Defendant of Government's proposed offer to resolve the case prior to trial and to reduce Defendant's sentencing exposure in exchange for Defendant's cooperation."

(2) Defense "counsel failed to investigate and discover whether there was a pre-trial offer available to Defendant."

ORDER - 3

## DISCUSSION

Under *Strickland,* Mr. Crawford must show both that his trial counsel's performance was deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "It is counsel's 'dut[y] to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.'" *Nunes v. Mueller,* 350 F.3d 1045, 1053 (9th Cir. 2003) ( citing *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). Defense counsel's failure to inform a defendant of a plea offer is ineffective assistance. *United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir.1994). "It is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest." *United States v. Leonti,* 326 F.3d 1111, 1117 (9th Cir. 2003)  One could reasonably infer from these propositions, that where a defendant has an interest in resolving a case prior to trial, defense counsel has a duty to investigate possible plea deals where it is in the defendant's best interest. The defendant's interest in seeking a plea deal must be based on competent advice regarding the consequences of going to trial. "[W]here the issue is whether to advise the client to plead or not 'the attorney has the duty to advise the defendant of the available options and possible consequences' and failure to do so constitutes ineffective assistance of counsel." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir.1994), (quoting *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir.1981)). To show prejudice, Mr. Crawford must show a *reasonable probability* that he would have accepted a plea offer if presented to him. *Strickland*, 466 U.S. at 687-91, 694.

Mr. Crawford received ineffective assistance of counsel. The Court finds that while Mr. Phelps' provided effective assistance of counsel, his representation was cut short prior to the point where he would have advised his client to accept the Government's freetalk offer or to engage in serious plea negotiations. Even had he discussed the option of accepting the freetalk letter or entering into a plea agreement, he made it clear that he would

normally wait to do either of those things until after the Court ruled on the pending Motion to Suppress.

However, Mr. Williams provided ineffective assistance of counsel by not discussing the freetalk letter or discussing the possibility of negotiating a plea agreement with Mr. Crawford. Once the Court denied the Motion to Suppress, it should have been plain to Mr. Williams that the Government possessed a mountain of evidence against Mr. Crawford. Mr. Crawford testified that he had information he was willing to share with the Government that he was hopeful would encourage the Government to agree to a lower sentence. He testified that he asked his counsel more than once to pursue plea negotiations in light of the strong evidence against him.

There is no evidence before the Court that contradicts Mr. Crawford's version of events once Mr. Williams took over representation. In fact, Mr. Williams' disbarment supports Mr. Crawford's version of events. The grounds of Mr. Williams' disbarment included failure to communicate with clients and lack of diligence. The facts underlying those grounds are consistent with Mr. Crawford's description of his experience.

Mr. Crawford provided ample evidence supporting prejudice. His actions at the time of arrest illustrated a willingness to share information with the Government. Mr. Phelps indicated that for the course of his representation, he was pursuing both a trial track and a plea agreement track, but had not yet settled on an option because such a decision was premature. Further, Mr. Crawford indicated that he attempted to persuade Mr. Williams to pursue a plea deal with no avail and that he attempted to plea guilty during trial only to be rebuffed by his own counsel. The Government provided no information which would indicate that Mr. Williams ever approached the Government regarding a plea agreement on Mr. Crawford's behalf. For these reasons, there is more than a reasonable probability that given effective counsel, Mr. Crawford would have accepted a plea agreement. The record also reflects a strong likelihood that Mr. Crawford had information that he would have

ORDER - 5

shared with the Government in a freetalk pertaining to the distribution of controlled substances and an unsolved murder.

The Court now must fashion a remedy that is "tailored to the injury suffered and [does] not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). "[T]he remedy for counsel's ineffective assistance should put the defendant back in the position he would have been in if the Sixth Amendment violation had not occurred. . . ." *United States v. Blaylock*, 20 F.3d 1458, 1468 (9th Cir. 1994). "Several courts have recognized that where the ineffective assistance occurred before trial, as in cases where the harm consisted in defense counsel's failure "to communicate a plea offer to defendant, . . . [granting a] subsequent fair trial does not remedy this deprivation. *Id* at 1468.

The Court is in the difficult position of attempting to make Mr. Crawford whole without having any specific offer or any idea the value of Mr. Crawford's potential cooperation at the time he would have provided it. If the Court were to simply grant a new trial, in light of the overwhelming evidence against Mr. Crawford, a conviction would be likely and the Government has little incentive to offer a plea agreement. However, as there was never any specific offer, the Court cannot reinstate a plea offer. If the Court were to reinstate the freetalk letter, the Court is concerned it would be of very little use to either the Government or Mr. Crawford due to the fact that any information he had is now stale. Even if the Government accepted the information, the decision to request a substantial assistance departure lays with the Government and it would be difficult for the Government to assess to what extent Mr. Crawford's information would have been helpful at the time.

In light of this dilemma, the Court requests input from the parties for a proposed remedy that, to the extent possible, makes Mr. Crawford whole for the ineffective assistance provided by Mr. Williams. Accordingly,

1    **IT IS ORDERED** that:

2    1.   Mr. Crawford's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence, filed May 13, 2009, **Ct. Rec. 182,** is **GRANTED.**

2.   The parties shall file and serve simultaneous briefs suggesting an appropriate remedy no later than **September 7, 2010.**  The Court welcomes a joint proposed remedy if the parties can negotiate an agreement.

The District Court Executive is directed to file this Order, send a copies to counsel, and set a **CASE MANAGEMENT DEADLINE** for September 14, 2010.

**DATED** this 29th day of July, 2010.

                                  s/ Wm. Fremming Nielsen
                                  WM. FREMMING NIELSEN
07-28                             SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 7